**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:19-cv-00065-MR**
**[CRIMINAL CASE NO. 1:17-cr-00055-MR]**

| | | |
|---|---|---|
| PRUDENCIO RODRIGUEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion to Vacate,

Set Aside, or Correct Sentence [CV[1] Doc. 1] and the Petitioner's "Motion for

Default and for Counsel" [CV Doc. 6].

## I.    BACKGROUND

On October 26, 2016, Madison County deputies stopped the Petitioner

Prudencio Rodriguez's car because the license plate had been revoked. [CR

Doc. 21: PSR at 5 ¶ 8].  The deputies ran the Petitioner's information prior to

approaching the car and learned that he was on probation and that he should

_____

[1] Because this Memorandum and Order must reference documents contained on the docket in both Petitioner's civil case and his criminal case, the Court will cite to documents from the Petitioner's civil case with the prefix "CV."  The Court will cite to documents from the Petitioner's criminal case with the prefix "CR."

be approached with caution due to prior gang activity.  [Id.].  The Petitioner consented to a search of his car, where deputies found digital scales and 25 grams of methamphetamine.  [Id. at 5 ¶ 9].  Deputies also found a .38 caliber firearm and nineteen .38 caliber bullets.  [Id. at 5 ¶ 10].

The Petitioner was charged in a Bill of Indictment with three counts: (1) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1); (2) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g); and (3) possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A).  [CR Doc. 1: Indictment].  In May 2017, the parties entered into a written Plea Agreement in which the Petitioner agreed to plead guilty to the methamphetamine trafficking and § 924(c) firearm charges, and the Government agreed to dismiss the felon-in-possession charge.  [CR Doc. 12: Plea Agreement].  The parties agreed that the Petitioner was responsible for twenty to thirty grams of a methamphetamine mixture or substance (based on the 25 grams located in the Petitioner's car); that his guilty plea was timely for purposes of acceptance of responsibility; and that either party could argue for enhancements, departures, or variances at sentencing.  [Id. at 2 ¶ 8.a., b., e.].  As part of the Plea Agreement, the Petitioner acknowledged that any estimate of a likely sentence was a prediction, not a

promise; that this Court could impose a sentence up to the statutory maximum for each count; and that he could not withdraw his plea as a result of the sentence imposed. [Id. at 2 ¶ 7]. The Petitioner also acknowledged that, if the Court "determine[d] from [the Petitioner's] criminal history" that he qualified as a career offender under the Sentencing Guidelines, that "provision may be used in determining the sentence." [Id. at 2 ¶ 8.c.]. Further, as part of this Plea Agreement, the Petitioner waived the right to challenge his conviction or sentence on appeal or in any post-conviction hearing, except for claims of ineffective counsel or prosecutorial misconduct. [Id. at 5 ¶ 20].

The Magistrate Judge conducted a plea hearing during which the Petitioner stated under oath that he understood the minimum and maximum penalties that applied to his offenses; that he understood the sentencing guidelines and knew that the Court was not bound by them; and that he understood that he would still be bound by the terms of his Plea Agreement even if he received a higher sentence than he expected. [CR Doc. 35: Plea Tr. at 7-15]. The Petitioner admitted that he was pleading guilty because he had in fact committed the offenses. [Id. at 16]. The Petitioner confirmed that his guilty plea was voluntary and was not the result of any promises outside of the written terms of his Plea Agreement. [Id. at 20-21]. The Government

summarized the terms of the Plea Agreement, including the parties' agreement that if the Court determined that the Petitioner was a career offender that provision could apply, and the Petitioner confirmed that he understood and agreed with those terms. [Id. at 21-23]. The Petitioner also represented that he had had sufficient time to discuss any possible defenses with his attorney and that he was entirely satisfied with her services. [Id. at 24]. The Magistrate Judge accepted the Petitioner's guilty plea, finding that it was knowingly and voluntarily made. [Id. at 25-26].

In preparation for sentencing, a probation officer prepared a presentence report ("PSR"). The probation officer calculated a total offense level ("TOL") of 15 and a criminal history category ("CHC") of VI, resulting in an advisory Guidelines range of 40 to 51 months for the drug trafficking offense. [CR Doc. 21: PSR at 7 ¶ 26, 10 ¶ 43, 19 ¶ 82]. The PSR further noted that the Petitioner faced a statutory mandatory minimum sentence of at least 60 months for the firearm offense, to run consecutively to the sentence for the drug trafficking offense. [Id.]. Thus, under the PSR's guidelines calculation, the Petitioner faced a total sentence of 100 to 111 months' imprisonment. [Id.].

Neither party filed written objections to the PSR. At the sentencing hearing, the Petitioner reaffirmed that the answers he gave during the Rule

11 hearing were correct, that he had committed the offenses, and that his guilty plea was voluntary. [CR Doc. 36: Sent. Tr. at 5]. This Court found that the Petitioner guilty plea was knowingly and voluntarily made and accepted it. [Id. at 6-7]. The Government then objected to the Guidelines calculation set forth in the PSR, arguing for the first time that the Petitioner was a career offender based on his 2008 Florida conviction of aggravated assault with a deadly weapon and his 2013 North Carolina conviction for manufacturing methamphetamine. [Id. at 9-11]. The Court continued the hearing to allow the Petitioner and his counsel an opportunity to address the Government's objection. [Id. at 11-12].

Prior to the reconvened sentencing hearing, the Government filed a sentencing memorandum in support of the career offender enhancement and attached copies of the judgments for the two predicate offenses, as well as the arrest report and charges for the Petitioner's aggravated assault with a deadly weapon offense. [CR Doc. 26: Sent. Memo.]. The judgment for the aggravated assault with a deadly weapon offense indicated that the Petitioner was convicted of violating Florida Statutes §§ 784.021 (aggravated assault) and 775.087(1) (possession or use of a weapon) and was sentenced to three years' imprisonment. [CR Doc. 26-2 at 4, 6]. The Government argued that aggravated assault with a deadly weapon was a crime of

violence because aggravated assault was an enumerated offense under the career offender provision. [CR Doc. 26 at 6-7]. The Government further argued that because the Petitioner's conviction under § 775.087(1) established that he possessed a deadly weapon during the offense, this offense qualified as a crime of violence under the force clause. [Id. at 7-8].

At the continuation of the sentencing hearing, the Petitioner's counsel argued that the Petitioner was not a career offender. [CR Doc. 37: 2d Sent. Tr. at 5-12]. Specifically, counsel argued that the Florida definition of aggravated assault was broader than the generic definition because it included offenses where there is no mens rea requirement, such as reckless driving, as well as offenses in which a victim does not see a weapon. [Id. at 7, 9]. Additionally, counsel argued that the Florida statute included threats, whereas the generic statute did not. [Id. at 17-18]. The Government, in addition to the arguments previously raised, argued that the Petitioner's assault with a deadly weapon conviction also qualified under the force clause because the deadly weapon statute added an element, namely that the deadly weapon was used. [Id. at 13-15]. The Government pointed to the judgment as showing that the deadly weapon was used. [Id. at 18-19].

This Court determined that aggravated assault is a specific intent crime under Florida law and held that it falls within the generic definition of

aggravated assault and is an enumerated offense under the career offender guideline. [Id. at 21 (citing Gonzalez v. United States, No. 8:07-cr-134-T-17EAJ, 2012 WL 279451, at *7 (M.D. Fla. Jan. 31, 2012) (recognizing that Florida's aggravated assault statute is a qualifying predicate offense under the career offender guideline))]. The Court therefore concluded that the Petitioner was a career offender. [Id. at 22]. Based on the career offender Guideline, the Court calculated an advisory Guidelines range of 262 to 327 months' imprisonment considering both counts of conviction. [Id. at 25].

The Petitioner's counsel argued for a downward variance. Specifically, counsel argued that the Guidelines range without the career offender enhancement was appropriate, citing the nature of the offense (i.e., being stopped for a license plate violation and having a gun that there was no evidence that he used); his cooperation with police, even allowing them to search the car; the fact that the methamphetamine found in his car was a mixture and would only have resulted in an offense level of 15; his young age when two of his prior convictions were committed; and his being raised by a single parent and only completing the seventh grade. [Id. at 26-32]. Counsel argued that a ten-year sentence would promote deterrence and rehabilitation, and that the Guidelines range overrepresented the seriousness of the offense, as did the career offender enhancement because

the Petitioner's prior convictions were already taken into account by his criminal history category. [Id. at 28-30]. Counsel also argued that an unduly harsh sentence would not promote respect for the law. [Id. at 29-30].

The Court sentenced the Petitioner to a total sentence of 192 months, comprised of a downward-variance sentence of 132 months' imprisonment for the drug trafficking offense and a consecutive term of 60 months' imprisonment for the firearm offense. [Id. at 36]. The Court based the downward variance on the relatively small quantity of methamphetamine in the offense of conviction but explained that, based on the Petitioner's criminal history, the Sentencing Guidelines advised range was "largely appropriate." [Id. at 40]. The Court further stated that this sentence was appropriate under the 18 U.S.C. § 3553(a) factors and that, even if the Petitioner were not a career offender, "I don't know that it would have made much of a difference with regard to the sentence that I ultimately imposed." [Id. at 41].

The Petitioner filed a timely appeal with the Fourth Circuit. [CR Doc. 29: Notice of Appeal]. On appeal, the Petitioner argued that his prior conviction under Fla. Stat. Ann. § 784.021 did not qualify as a career offender predicate and, therefore, the advisory guidelines range used by this Court was incorrect. After obtaining briefing from the parties, the Fourth Circuit

dismissed the Petitioner's appeal, holding that he had knowingly and voluntarily waived the right to appeal as part of his Plea Agreement. United States v. Rodriguez, No. 18-4298 (4th Cir. Dec. 3, 2018) (holding the issue raised by Petitioner on appeal "falls squarely within the compass of his waiver of appellate rights").

The Petitioner timely filed the present motion to vacate on February 15, 2019. [CV Doc. 1]. After receiving an extension of time to do so [see CV Doc. 4], the Government filed its Response on June 3, 2019 [CV Doc. 5]. On June 4, 2019, the Petitioner filed a Motion[2] seeking the appointment of counsel to represent him in this proceeding. [CV Doc. 6]. The Petitioner filed his Reply to the Government's Response on June 17, 2019. [CV Doc. 7].

## II.    STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings"

---

[2] In this Motion, the Petitioner also moved for the entry of default against the Government in the event that a response had not been filed by June 3, 2019. [CV Doc. 6]. The Petitioner acknowledged that in the event of the Government's timely filing, this request would be moot. [Id.]. As noted, the Government filed a timely Response. [CV Doc. 5]. As such, the Petitioner's request for the entry of default is denied as moot.

in order to determine whether a petitioner is entitled to any relief.   After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing.  <u>See</u> <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

## III.   DISCUSSION

### A.   Ineffective Assistance of Counsel Claim

Under the Sixth Amendment, a criminal defendant has the right to effective assistance of counsel. U.S. CONST. amend. VI. In order to challenge a conviction based on the ineffective assistance of counsel, a petitioner has the burden of establishing that: (1) defense counsel's performance was deficient, in that counsel's "representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms," and (2) the petitioner suffered prejudice as a result. <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984).

In order to establish prejudice, a petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.  In the context of a claim of ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable

probability that he would have received a lower sentence.  See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 669.  It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).  In considering the prejudice prong, a court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  If a petitioner fails to conclusively demonstrate prejudice, the Court need not consider the performance prong.  United States v. Terry, 366 F.3d 312, 315 (4th Cir. 2004).

Here, the Petitioner argues that counsel was ineffective for failing to object at the sentencing hearing to the career offender enhancement. Specifically, the Petitioner contends that counsel was deficient in arguing that his prior Florida conviction for aggravated assault with a deadly weapon was not a crime of violence.  [CV Doc. 1-1 at 4].  He argues that counsel should have obtained the records for the prior conviction, particularly the plea colloquy, and should have argued that the statute was divisible and that the

modified categorical approach applied to determine whether it was an enumerated offense.  [Id. at 6, 13].  He further asserts that the Shepard[3] documents would have shown that he was convicted of a non-violent offense.  [Id. at 8]. He also contends that counsel should have objected to considering both the aggravated assault and the weapon statutes as one offense.  [Id. at 6, 9].

A defendant qualifies as a career offender if: (1) he was at least 18 years old at the time of his current offense; (2) his current offense is a felony crime of violence or controlled substance offense; and (3) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  A "crime of violence" is any state or federal offense punishable by more than a year of imprisonment that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) is one of several enumerated offenses, including "aggravated assault."  U.S.S.G. § 4B1.2(a).

Under Florida law, aggravated assault is "an assault: (a) [w]ith a deadly weapon without intent to kill; or (b) [w]ith an intent to commit a felony." Fla. Stat. Ann. § 784.021 (West 2008).  It is a specific intent crime.  To find a

---

[3] Shepard v. United States, 544 U.S. 13 (2005).

defendant guilty of aggravated assault, a jury must find that the defendant "intentionally and unlawfully threatened, either by word or act, to do violence to" the victim. <u>Cambell v. State</u>, 37 So. 3d 948, 949 (Fla. Dist. Ct. App. 2010) (citing Florida Standard Jury Instruction 8.2). Additionally, where "during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery," the classification of the felony is increased. Fla. Stat. Ann. § 775.087(1) (West 2008).

The Petitioner has not shown that counsel was constitutionally deficient in arguing that he did not qualify as a career offender. Counsel objected to the enhancement and argued that the Florida statute covered broader conduct than the generic crime of aggravated assault. The fact that this Court overruled counsel's objection does not render her assistance deficient. Moreover, contrary to the Petitioner's argument, the <u>Shepard</u> documents would not have made a difference because the Government provided the judgment from his conviction for aggravated assault with a deadly weapon, and this document showed that he was convicted under Fla. Stat. Ann. §§ 784.021 and 775.087(1). [CR Docs. 26-1, 26-2]. Thus, the documents do not show that he was convicted of a non-violent offense, and

his assertion that the plea colloquy for this offense would have shown something different is conclusory and speculative. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013).

The Petitioner next argues that counsel was ineffective for failing to challenge the Government's "consolidation" of his violation of these two statutes into a single charge of aggravated assault with a deadly weapon. The Petitioner asserts that such consolidation was "hypothetical," and that the convictions do not show that the assault was actually committed with such a weapon. The Petitioner's argument, however, is belied by the record. The Florida state court judgment shows that he was convicted of aggravated assault with a deadly weapon, not simply aggravated assault. The Petitioner's claim is without merit. See, e.g., United States v. Calhoun, 696 F. App'x 482, 483 (11th Cir. 2017) (holding that Florida aggravated assault convictions qualified as crimes of violence under the elements clause of § 4B1.2(a)(1)).

For all these reasons, the Petitioner cannot show deficient performance by his counsel. Further, he has failed to show that a different objection by counsel would have created a reasonable probability that this Court would have come to a different conclusion regarding the Petitioner's

status as a career offender.  The Petitioner's ineffective assistance claim therefore is denied.

### B.    Additional Claims Raised in Petitioner's Affidavit

In support of his motion to vacate, the Petitioner submits an affidavit, in which he asserts that counsel told him that he did not "have to worry about any more than 111-months"; that if he agreed to the plea deal, the Government "may not pursue enhancements"; that he would not "have to worry about getting more than 10 years" even if his sentence was enhanced; and that the next plea deal would be to twenty years or more.  [CV Doc. 1-1 at 12].  He further asserts that counsel never told him that his prior offenses were crimes of violence and that he told the Court that he understood that it did not have to follow the recommendations in the plea agreement, but he did not understand the significance of this.  [Id. at 13].

The factual contentions in the Petitioner's affidavit that do not relate to his claim that he received ineffective assistance of counsel at sentencing do not state a claim as they were not set forth in the Petitioner's motion to vacate.  See Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts (stating that the motion must set forth all of the grounds for relief, with supporting facts, and state the relief requested).

Even if the Court considered these allegations as raising a claim, they do not entitle the Petitioner to relief.

In evaluating claims under § 2255, statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (citation omitted). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Here, the Petitioner waived any pre-plea claims of ineffective assistance of counsel by pleading guilty. Even if such claims were not so waived, the contentions set forth in the Petitioner's affidavit contradict his testimony during the plea hearing that he understood that he could be sentenced up to the statutory maximum for each count, that he understood that he could be sentenced as a career offender, and that no promises were made to him outside of the written terms of the plea agreement. Accordingly, the Petitioner's contention that he did not understand that his sentence could be enhanced is without merit.

Notably, the Petitioner does not argue that his guilty plea was unknowing or involuntary. Any assertion that his guilty plea was not knowingly and voluntarily entered also would contradict his testimony at the plea hearing and at sentencing and would be foreclosed by the Fourth Circuit's determination on direct appeal that he knowingly and voluntarily waived his appellate rights as part of his plea agreement. Moreover, the Petitioner does not argue that he otherwise would have proceeded to trial.[4]

_____

[4] Rather than proceeding to trial, the Petitioner seeks as relief a "suitable plea deal." [CV Doc. 1 at 13]. Even if such relief were appropriate (which it is not), there is no evidence

[CV Doc. 1 at 13].  As such, he also cannot show prejudice.  See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (stating that defendant must show that proceeding to trial would have been objectively reasonable); Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (holding to establish prejudice in the context of a guilty plea, a petitioner must show that "'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial'").  For all these reasons, any claims of ineffective assistance prior to the Petitioner's guilty plea must be denied.

### C.    Request for Evidentiary Hearing

The Petitioner requests an evidentiary hearing on his motion to vacate. [CV Doc. 1-1 at 11].

A § 2255 petitioner's claims may be dismissed without an evidentiary hearing where the parties' submissions conclusively show that the petitioner is not entitled to relief.  See Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970).  "Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."  See Nickerson v. Lee, 971 F.2d 1125,

---

that a better plea deal would have been forthcoming, particularly where the Government dropped a charge carrying a consecutive sentence, did not file a 21 U.S.C. § 851 enhancement, and agreed to a much smaller quantity of methamphetamine than the Petitioner's own admissions supported.

1136 (4th Cir. 1992), <u>abrogated on other grounds by</u> <u>Gray v. Netherland</u>, 518 U.S. 152 (1996). A petitioner also may not rely on assertions that are "contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact" to obtain an evidentiary hearing. <u>Jackson v. United States</u>, 638 F. Supp. 2d 514, 528 (W.D.N.C. 2009) (internal quotations and citation omitted).

Here, the record is sufficient for this Court to determine that the Petitioner's motion to vacate lacks merit. Accordingly, the Petitioner's request for an evidentiary hearing is denied.

### D. Request for the Appointment of Counsel

The Petitioner moves for the appointment of counsel to represent him in this proceeding. [CV Doc. 6]. Prisoners have no constitutional right to counsel in a post-conviction proceeding. <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555-56 (1987); <u>Rouse v. Lee</u>, 339 F.3d 238, 250 (4th Cir. 2003), <u>cert. denied</u>, 541 U.S. 905 (2004). Nonetheless, the Court may appoint counsel to represent a habeas petitioner when the interests of justice so require and the petitioner is financially unable to obtain representation. <u>See</u> 18 U.S.C. § 3006A(a)(2)(B). In the instant case, however, Petitioner has failed to demonstrate that the interests of justice warrant the appointment of counsel.

See United States v. Riley, 21 F. App'x 139, 141-42 (4th Cir. 2001).

Accordingly, Petitioner motion for the appointment of counsel is denied.


## IV.     CONCLUSION

For the foregoing reasons, the Petitioner's motion to vacate is denied and dismissed.    The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right.  See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)).  The Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the motion to vacate states a debatable claim of the denial of a constitutional right.  Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  As a result, the Court declines to issue a certificate of appealability.  See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [CV Doc. 1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that the Petitioner's "Motion for Default and Counsel" [CV Doc. 6] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: April 13, 2020

Martin Reidinger
United States District Judge